IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIFFANY ALEXANDER, individually and
on behalf of minor C.A.,[1]

    *Plaintiffs*,

    v.

PRINCE GEORGE'S COUNTY BOARD
OF EDUCATION,

    *Defendants*.

Civil No.: 8:24-cv-03770-JRR

## MEMORANDUM OPINION

Pending now before the court is Defendant Prince George's County Board of Education's Motion to Dismiss [the] Complaint (ECF No. 5; the "Motion") brought by Plaintiff Tiffany Alexander individually and on behalf of her minor child, C.A.  The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## I.    BACKGROUND[2]

C.A. is a 16-year-old girl who lives with her mother, Tiffany Alexander, in Prince George's County, Maryland.  (ECF No. 2 ¶¶ 1–2, 5–6.)  C.A. "suffers from Dejerine Sottas, a form of muscular dystrophy caused by Charcot Marie Tooth Disease." *Id.* ¶ 10.  As a result of this disease, C.A. uses a wheelchair and has many medical appointments. *Id.* ¶ 11.  She also "suffers from anxiety and depression." *Id.* ¶ 24.  She "was found to have average and above average cognitive skills" and "delays in her gross motor and other physical skills." *Id.* ¶¶ 18–19.  At all times

---

[1] In accordance with Federal Rule of Civil Procedure 5.2, the court will refer to the minor Plaintiff by her initials, C.A.
[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint.  (ECF No. 2.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

relevant, C.A. has attended Prince George's County Public Schools ("PGCPS") within the Prince George's County school district. *Id.* ¶¶ 13–15.

C.A. attended Ardmore Elementary School from pre-kindergarten through fifth grade. (ECF No. 2 ¶¶ 13, 20.) While there, she had an "adoptive physical education teacher." *Id.* ¶ 21. As her physical condition declined, C.A. required a dedicated aide to navigate the school building. *Id.* ¶ 22. When she transitioned to Ernest Everett Just Middle School, Defendant "ceased to provide a dedicated aide, requiring that either Tiffany Alexander or another relative provide aide services to [C.A.] during the school day." *Id.* ¶¶ 14, 25. "Eventually, [C.A.] was unable to continue to attend Ernest Everett Just Middle School because of the lack of assistance of an assigned aide and inability to navigate the physical lay-out of the school without assistance." *Id.* ¶ 28.

For the 2023-2024 school year, C.A. attended Charles H. Flowers High School ("Flowers High School"), which had a multi-level campus, out of a "desir[e] to attend high school with children her own age." *Id.* ¶¶ 15, 29–30. At the time of her enrollment, Tiffany Alexander requested C.A.'s "504 Plan be re-evaluated" and that she be assessed for an Individualized Education Plain ("IEP"). (ECF No. 2 ¶¶ 31–32.) Both requests were denied. *Id.* ¶ 33. Further, while C.A. "was assigned a dedicated aide, . . . the aide refused to provide some of the hands-on services that she needed, such as assistance with using the bathroom." *Id.* ¶ 35. After the aide left her employment, Defendant did not provide C.A. with a replacement aide. *Id.* ¶ 37.

Plaintiffs allege a number of issues during C.A.'s attendance at Flowers High School, including that she has to use the bathroom in the nurse's office, *id.* ¶ 39, that the elevator on which she is dependent is frequently out of service, *id.* ¶¶ 39–40, that she is "often unable to get make-up work" when out of school for medical appointments, *id.* ¶ 41, that she is "unable to participate in Homecoming activities or extracurricular clubs" because they are not wheelchair accessible, *id.*

¶ 44, that many of the classrooms are not wheelchair accessible, *id.* ¶ 45, and that she was charged additional money to attend a field trip because of "the size of her wheelchair," *id.* ¶ 47.  C.A. has also requested tutoring services or a note-taker, an extra set of books and supplemental material, a referral to occupational and physical therapy, and extra time for assignments, but her requests were all denied.  (ECF No. 2 ¶¶ 42–43, 48–49.)

Based on the foregoing, Plaintiffs filed formal complaints with the U.S. Department of Education's Office for Civil Rights ("OCR") on August 21, 2023 and November 14, 2023.[3]  *Id.* ¶ 50.  A week prior to the start of the 2024-2025 school year, C.A. "was withdrawn"[4] from Flowers High School for the purported reason that Tiffany Alexander's home was not within the applicable geographical area to attend the school despite the fact that Tiffany Alexander had submitted an affidavit "demonstrating that she lived with relatives, who were assisting with [C.A.'s] care."[5]  *Id.* ¶¶ 53–54.  Tiffany Alexander appealed the withdrawal decision and C.A. was allowed to stay at Flowers High School for the 2024-2025 school year.  *Id.* ¶¶ 56–57.  She later requested to move C.A. to a school "that was all one level, or nearly one level, and that PGCPS still provide transportation," but her request was denied.  (ECF No. 2 ¶ 58.)  C.A.'s anxiety and depression "has greatly increased" following her treatment in PGCPS.  *Id.* ¶ 62.

On December 3, 2024, Plaintiff initiated this action in the Circuit Court for Prince George's County, Maryland, asserting the following 16 counts:

---

[3] Plaintiffs further allege that "[i]n April 2024, Tiffany Alexander initiated a civil claim against PGCPS for discrimination" on behalf of C.A.  (ECF No. 2 ¶ 51.)  The court is unable to discern if Plaintiffs' allegation is a typographical error, or if she filed a separate civil action from the one here.

[4] The Complaint alleges that C.A. "was withdrawn from Flowers."  (ECF No. 2 ¶ 52.)  In view of the context of the allegations, the court construes Plaintiffs to aver that C.A. was disallowed from attending, not that her mother voluntarily withdrew her from the school.

[5] Plaintiffs' allegation that "she lived with relatives" is ambiguous with respect to whether "she" is C.A. or her mother; regardless, the court construes the Complaint to allege that Tiffany Alexander provided an affidavit that C.A. lived with relatives within the Flower High School district.

Count I: Violation of the Americans with Disabilities Act ("ADA")—Exclusion from Participation in the Activities of a Public Entity (C.A.);

Count II: Violation of the ADA—Denial of Benefits Provided by a Public Entity (C.A.);

Count III: Violation of the ADA—Discrimination by a Public Entity (C.A.);

Count IV: Violation of the ADA—Failure to Accommodate (C.A.);

Count V: Violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504")—Exclusion from Participation (C.A.);

Count VI: Violation of Section 504—Denial of Benefits (C.A.);

Count VII: Violation of Section 504—Discrimination (C.A.);

Count VIII: Violation of the Education for All Handicapped Children Act (C.A.);

Count IX: Violation of the Individuals with Disabilities Education Act ("IDEA") (C.A.);

Count X: Violation of 42 U.S.C. § 12182—Discrimination in Public Accommodation (C.A.);

Count XI: Violation of the Fourteenth Amendment of the U.S. Constitution (C.A.);

Count XII: Violation of Article 24 of the Maryland Declaration of Rights (C.A.);

Count XIII: Retaliation for Engaging in Protected Activity (C.A.);

Count XIV: Violation of the ADA—Disparate Treatment (Tiffany Alexander);

Count XV: Retaliation for Engaging in a Protected Activity (Tiffany Alexander); and

Count XVI: Intentional Infliction of Emotional Distress ("IIED") (C.A. and Tiffany Alexander).

*Id*. ¶¶ 63–267.  Defendant now moves to dismiss Counts V, VI, VII, VIII, IX, X, XI, XIV, and XVI.  (ECF No. 5.)

## II.    <u>LEGAL STANDARD</u>

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations,*

*LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at \*2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.    ANALYSIS

### A.  Administrative Exhaustion of Counts V, VI, VII, and IX

Defendant contends that Plaintiffs' Counts V, VI, and VII, alleging violations of Section 504, and Count IX, for violation of IDEA, must be dismissed based on failure to exhaust administrative remedies.  (ECF No. 5-1 at pp. 4–6.)  Plaintiffs do not challenge their failure to exhaust administrative remedies, but instead argue that two exceptions to administrative exhaustion are applicable here—futility and risk of harm to C.A.[6]  (ECF No. 9 at pp. 3–5.)

Pursuant to 20 U.S.C. § 1415, "the IDEA establishes formal procedures for resolving disputes." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 159 (2017).  As the Supreme Court has explained:

> To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides). See § 1415(b)(6). That pleading generally triggers a "[p]reliminary meeting" involving the contending parties, § 1415(f)(1)(B)(i); at their option, the parties may instead (or also) pursue a full-fledged mediation process, see § 1415(e). Assuming their impasse continues, the matter proceeds to a "due process hearing" before an impartial hearing officer. § 1415(f)(1)(A); see § 1415(f)(3)(A)(i). Any decision of the officer granting substantive relief must be "based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(i). If the hearing is initially conducted at the local level, the ruling is appealable to the state agency. See § 1415(g). Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. See § 1415(i)(2)(A).

---

[6] Plaintiffs also offer the rather rote assertion that "initiating an administrative complaint and investigation with OCR, in which both parties were able to participate in front of a neutral body, satisfied the requirement that there be an attempt to resolve IDEA disputes prior to initiating litigation." (ECF No. 9 at p. 4.)  The court does not find Plaintiffs' conclusory assertion, unsupported by citation to law, persuasive especially where, as Defendant acknowledges, an OCR complaint would not provide for the IDEA statutorily-prescribed procedures. *See* 20 U.S.C. § 1415.

*Id.*

Prior to bringing suit under the IDEA in federal court, "a plaintiff must exhaust her administrative remedies." *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 513–14 (4th Cir. 2014). This exhaustion requirement is set forth at 20 U.S.C. § 1415(l). *See Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 146 (2023) (discussing same). The exhaustion requirement also applies to actions under Section 504 where "the substance, or gravamen, of the plaintiff's complaint" seeks relief for the denial of a free appropriate education, like under the IDEA. *Fry*, 580 U.S. 154, 165 (2017). Determination of whether a plaintiff's suit seeks such relief is made by looking to "the substance, or gravamen, of the plaintiff's complaint." *Id.* Accordingly, "where the plaintiff seeks relief under . . . § 504 'that is also available under' the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures before pursuing her claims in federal court." *K.M. by & Through C.M. v. Bd. of Educ. of Montgomery Cnty.*, No. CV PX-17-2759, 2019 WL 330194, at *4 (D. Md. Jan. 25, 2019), *adhered to on denial of reconsideration,* No. 8:17-CV-02759-PX, 2019 WL 3892321 (D. Md. Aug. 19, 2019) (quoting 20 U.S.C. § 1415(l)).

### 1. Counts V and VII

As an initial matter, Defendant's conclusory assertion that "the gravamen of Plaintiffs' Complaint is the Defendant[']s alleged failure to provide equal access to a 'quality, free public education' based on her disability" is not compelling. (ECF No. 5-1 at p. 4.) Defendant advances no argument to support this conclusion, and instead cites multiple paragraphs in Plaintiffs' Complaint. To be sure, the "gravamen" of Plaintiff's Count VI appears to be denial of free appropriate public education, *see* ECF No. 2 ¶ 129; however, the same is not immediately apparent as to Plaintiffs' Counts V and VII, which relate to exclusion from participation in activities due to lack of wheelchair accessibility and disparate treatment, respectively.

The *Fry* Court's discussion regarding determination of the gravamen of a complaint supports the court's conclusion that Defendant fails to set forth adequate basis to support its assertion.  The Court explained:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE . . .
>
> Take two contrasting examples. Suppose first that a wheelchair-bound child sues his school for discrimination under Title II (again, without mentioning the denial of a FAPE) because the building lacks access ramps. In some sense, that architectural feature has educational consequences, and a different lawsuit might have alleged that it violates the IDEA: After all, if the child cannot get inside the school, he cannot receive instruction there; and if he must be carried inside, he may not achieve the sense of independence conducive to academic (or later to real-world) success. But is the denial of a FAPE really the gravamen of the plaintiff's Title II complaint? Consider that the child could file the same basic complaint if a municipal library or theater had no ramps. And similarly, an employee or visitor could bring a mostly identical complaint against the school. That the claim can stay the same in those alternative scenarios suggests that its essence is equality of access to public facilities, not adequacy of special education. . . .
>
> But suppose next that a student with a learning disability sues his school under Title II for failing to provide remedial tutoring in mathematics. That suit, too, might be cast as one for disability-based discrimination, grounded on the school's refusal to make a reasonable accommodation; the complaint might make no reference at all to a FAPE or an IEP. But can anyone imagine the student making the same claim against a public theater or library? Or, similarly, imagine an adult visitor or employee suing the school to obtain a math tutorial? The difficulty of transplanting the complaint

> to those other contexts suggests that its essence—even though not its wording—is the provision of a FAPE, thus bringing § 1415(*l*) into play.

*Fry*, 580 U.S. at 171–73 (footnotes omitted).

Defendant advances no argument that the "gravamen" of Plaintiffs' allegations that stem from the Flowers High School building not being wheelchair accessible (Count V), and from disparate treatment from similarly situated non-disabled children in PGCPS (Count VII) is the denial if a free appropriate public education. Where Defendant has not advanced argument as to same, the court declines to undertake the task *sua sponte*. Thus, in view of *Fry*, and absent more from Defendant, the court will deny the Motion to the extent it seeks dismissal of Counts V and VII for violation of Section 504.

### 2. *Count VI—Demand for Compensatory Damages*

Similarly, Defendant's argument as to Count VI under Section 504 is unavailing as to Plaintiffs' request for compensatory damages. The limiting language in § 1415(l) applies "*only* to suits that 'see[k] relief . . . also available under' [the] IDEA," and does not apply "where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief . . . [the] IDEA does not provide." *Luna Perez*, 598 U.S. at 147–48 (emphasis in original). Accordingly, under *Luna Perez*, "a plaintiff may assert a claim for compensatory damages under . . . Section 504 even if [she] has not exhausted [her] administrative remedies under the IDEA." *Coleman v. Prince George's Cnty. Bd. of Educ.*, No. DLB-21-68, 2023 WL 4483594, at *2 (D. Md. June 2, 2023), *aff'd sub nom.*, No. 23-1727, 2024 WL 379971 (4th Cir. Feb. 1, 2024); *see Farley v. Fairfax Cnty. Sch. Bd.*, No. 21-1183, 2023 WL 3092979, at *1 (4th Cir. Apr. 26, 2023) (discussing the *Luna Perez* holding).

Plaintiffs seek compensatory damages in Count VI—relief available under Section 504, but not the IDEA.  Therefore, Plaintiffs were not required to exhaust their administrative remedies before bringing action for compensatory damages under Count VI.  *Luna Perez*, 598 U.S. at 147–48 and *Coleman*, 2023 WL 4483594, at \*2–3, *supra*.  The court will deny the Motion on that basis.

### 3.    *Count VI—Demand for Injunctive Relief and Count IX*

Plaintiffs' claims in Count VI, under Section 504 (to the extent it seeks injunctive relief), and Count IX, under the IDEA, do not fare so well.  Plaintiffs contend they are excepted from administrative exhaustion (ECF No. 9 at pp. 3–5), but the court disagrees.

The Fourth Circuit has "identified three narrow exceptions to the administrative exhaustion requirement," including: "(1) where the administrative process would be futile; (2) when the parents do not receive the proposed notice of their administrative rights; or (3) where exhaustion would be harmful to the child." *K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F.4th 779, 793 n.8 (4th Cir. 2022) (citing *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002)).  "On a motion to dismiss, the party 'must allege facts that, if proven, would support one of the narrow exceptions to IDEA's exhaustion requirement.'" *K.I. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:19CV857, 2020 WL 3512213, at \*6 (M.D.N.C. June 29, 2020), *aff'd,* 54 F.4th 779 (4th Cir. 2022) (quoting *Learning Disabilities Ass'n of Md., Inc. v. Board of Educ. of Balt. Cty.*, 837 F. Supp. 717, 723 (D. Md. 1993)).  Plaintiffs contend the first and third exceptions are applicable here.

First, Plaintiffs' argument of futility is plainly without merit.  They contend the administrative process would have been futile because Defendant "took no action in response" to Tiffany Alexander's concerns raised in her OCR complaints, citing the principle that administrative remedies are not required if not reasonably available.  (ECF No. 9 at p. 4.)  Plaintiffs

do not plausibly allege (or argue) that the administrative process would have been futile due to, for instance, hearing officer bias, or because it could not provide the relief sought (excepting the compensatory damages the court addressed above). *See K.I.*, 2020 WL 3512213, at \*6 (analyzing both factors to determine whether the administrative process would have been futile); *C.A. by C.A. v. Bd. of Directors of Corvian Cmty. Sch.*, No. 322CV00035RJCDCK, 2023 WL 5747149, at \*4 (W.D.N.C. Sept. 6, 2023) (noting that futility requires a plaintiff make a "clear and positive showing" that pursuing administrative remedies would have been fruitless (citation omitted)).

Instead, Plaintiffs contend the process would have been futile because Defendant allegedly violated C.A.'s rights in the first place and failed to correct course when Tiffany Alexander complained.[7]  Plaintiffs' assertion is speculative at best; and if such circumstances were to amount to futility, the "narrow exception" would swallow the rule.  As a practical matter, as was the case here, most § 1415(l) complaints are likely pursued when the informal complaint route has left complained-of actions or conditions uncured to the complainant's satisfaction.  Indeed, that is precisely the purpose served by the rule—"allowing states to use their special expertise to resolve educational disputes," *see E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514–15 (4th Cir. 2014), and "providing a means whereby official abuse can be corrected without resort to lengthy and costly trial," *see Learning Disabilities Ass'n of Maryland, Inc. v. Bd. of Educ. of Baltimore Cnty.*, 837 F. Supp. 717, 725 (D. Md. 1993) (citation omitted).  Plaintiffs do not allege sufficient facts to invoke this exception.

---

[7] Plaintiffs also assert that Defendant's lack of response to the OCR complaints bolsters this conclusion.  But Plaintiffs do not allege Defendant was aware of the OCR complaints, that it was advised of the substance of those complaints, that it had been in contact with OCR, or that OCR requested corrective action which it failed to take.  For these reasons, Plaintiffs' assertion is not compelling.  Moreover, as explained *supra*, the court is not persuaded by Plaintiffs' argument that an OCR process is a substitute for the statutorily-mandated administrative procedures set forth in the IDEA.

Turning to Plaintiffs' assertion of harm to C.A., the court finds invocation of this exception equally unavailing. Plaintiffs contend that "time is of the essence" where a student "only has four (4) years to complete high school." (ECF No. 9 at p. 5.) The court appreciates that, of course, Plaintiffs want prompt relief for C.A.; however, a desire for quick relief is present in all cases. And every student's attendance in school is time-limited. Reading the exception as Plaintiffs urge turns the exception on its head and renders it the rule. This exception does not support waiver of administrative remedy exhaustion here.

The administrative requirements of the IDEA are "not merely a pleading hurdle." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 170 (2017). As set forth above, they serve important purposes and, except in narrow circumstances, amount to a mandatory claims-processing rule. *K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F.4th 779, 794 (4th Cir. 2022). Plaintiffs do not plausibly allege such narrow circumstances here. The court will therefore grant the Motion and dismiss Plaintiffs' Count VI, to the extent it seeks injunctive relief, and Count IX.[8]

**B. Count VIII: Violation of the Education for All Handicapped Children Act**

Defendant seeks dismissal of Plaintiffs' Count VIII, for violation of the Education for All Handicapped Children Act, as redundant to their IDEA claim. (ECF No. 5-1 at p. 5.) Plaintiffs do not dispute the redundancy, but instead contend they should be permitted to plead in the alternative pursuant to Rule 8(d). (ECF No. 9 at pp. 5–6.)

"Congress enacted the Education for All Handicapped Children Act (Public Law 94-142), also known as the EHA, in 1975 . . . . This landmark law's name changed to the Individuals with Disabilities Education Act, or IDEA, in a 1990 reauthorization."[9] *See Q.T. on behalf of H.P.-B. v.*

---

[8] Because the court dismisses Plaintiffs' Count IX for lack of exhaustion, it does not address Defendant's argument as to damages.

[9] U.S. DEP'T OF EDUC., *A History of the Individuals with Disabilities Education Act* (2024), https://perma.cc/M2WN-YNFX.

*Pottsgrove Sch. Dist.*, 70 F.4th 663, 664 (3d Cir. 2023) ("In 1975, Congress passed the Education for All Handicapped Children Act—now known as the Individuals with Disabilities Education Act."); *J.S. v. New York State Dep't of Corr. & Cmty. Supervision*, 76 F.4th 32, 35 (2d Cir. 2023) ("The IDEA, first enacted in 1975 as the Education for All Handicapped Children Act, Pub. L. No. 94-142, 89 Stat. 773, establishes a program under which the federal government provides funds to states to assist in their efforts to educate children with disabilities."); *Loudoun Cnty. Sch. Bd. v. Bunkua*, No. 1:23CV320 (DJN), 2024 WL 2274492, at *8 (E.D. Va. May 20, 2024) (noting that "the Education for all Handicapped Children Act of 1975, which was retitled in 1990 to the Individuals with Disabilities Education Act").

Asserting Count VIII under the Education of All Handicapped Children Act is not, as Plaintiffs' claim, a matter of alternative pleading; rather, it is redundant to, and subsumed by, their IDEA claim. Stated differently, the Education of All Handicapped Children Act does not provide an alternative legal basis for relief. The court will therefore grant the Motion and dismiss Count VIII.

## C. Counts X, XI, and XIV

Defendant seeks dismissal of Counts X, XI, and XIV for the following reasons: a public school is not a public accommodation under Title III of the ADA (Count X); Defendant is not a person subject to suit under 42 U.S.C. § 1983 (Count XI); and Tiffany Alexander cannot recover under the ADA based on the allegations at issue (Count XIV). (ECF No. 5-1 at pp. 6–9.) Plaintiffs concede these claims are properly subject to dismissal.[10] (ECF No. 9 at p. 8.) Accordingly, the court will grant the Motion and dismiss Counts X, IX, and XIV.

---

[10] Plaintiffs' concession appears to contain a typographical error in which they state that they concede Count IX "should be dismissed." (ECF No. 9 at p. 8.) Given Plaintiffs advance arguments opposing dismissal of Count IX and not Count XI, the court concludes that Plaintiffs' concession was as to Count XI, as opposed to Count IX.

### D. Count XVI: IIED[11]

Finally, Defendant moves to dismiss Plaintiffs' IIED claim, arguing that Plaintiffs' allegations of anxiety and depression are insufficient to support their claim of severe emotional distress.[12]  (ECF No. 5-1 at pp. 9–10.)  Plaintiffs, in turn, curiously fail to respond to Defendant's direct challenge, and instead argue they have alleged sufficient facts "that suggest it is plausible that [Defendant] intentionally caused emotional distress to the Plaintiffs."  (ECF No. 9 at pp. 7–8.)

"To state a prima facie case of intentional infliction of emotional distress, a plaintiff must allege facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Rubino v. New Acton Mobile Indus., LLC*, 44 F. Supp. 3d 616, 624 (D. Md. 2014) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). "When attempting to make such a showing, plaintiffs need to plead with specificity, as reciting 'in conclusory form the bare elements of an intentional infliction of emotional distress claim' will not do." *Lilly v. Baltimore Police Dep't*, 694 F. Supp. 3d 569, 596 (D. Md. 2023) (quoting *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 683 (D. Md. 2012)); *see Mulamba v. Bd. of Educ. of Baltimore Cnty.*, No. 1656, Sept. term, 2023, 2024 WL 5103270, at *11 (Md. Ct. Spec. App. Dec. 13, 2024) ("Each element of an IIED claim must be 'pled and proved with specificity.'") (quoting *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000)).  "To be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 248 (D. Md. 1997) (quoting

---

[11] "When considering a State law claim, the Court must apply the law of the forum state (including as to choice of law), whether proceeding under supplemental or diversity jurisdiction." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 418 n.17 (D. Md. 2022) (citing cases).

[12] In reply, Defendant challenges Plaintiffs' pleading as to all elements.

14

*Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59–60, *cert. denied*, 306 Md. 118 (1986)).

"Generally speaking, claims for IIED are disfavored, difficult to establish and, as such, 'rarely

viable.'" *Lewis-Davis v. Baltimore Cnty. Pub. Sch. Infants & Toddlers Program*, No. CV ELH-

20-0423, 2021 WL 1720235, at *14 (D. Md. Apr. 30, 2021) (citing cases).

Contrary to Plaintiffs' opposition, Defendant challenges Plaintiffs' pleading as to the fourth

element—that Plaintiff has not pled sufficient facts to support a showing of severe emotional

distress.  "In the context of an IIED claim, 'mere allegations of emotional trauma or humiliation

are insufficient.'" *Grant v. Atlas Rest. Grp., LLC*, No. CV GLR-20-2226, 2021 WL 2826771, at

*5 (D. Md. July 7, 2021) (quoting *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793, 804 (D.

Md. 2001)).  "To survive a motion to dismiss, the facts alleged must give rise to the inference that,

because of the defendant's egregious conduct, the plaintiff experienced 'severely disabling

emotional trauma,' . . . , *i.e.*, that she was rendered 'unable to function' or 'unable to attend to

necessary matters.'" *Lewis-Davis,* 2021 WL 1720235, at *14 (quoting *Chin v. Wilhelm*, CCB-02-

01551, 2006 WL 827343, at *9 (D. Md. Mar. 24, 2006)); *Pemberton v. Bethlehem Steel Corp.*, 66

Md. App. 133, 161 (1986)).  To survive the Motion, therefore, Plaintiffs must have "plead specific

facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Lewis-Davis*,

2021 WL 1720235, at *14 (quoting *Chin*, 2006 WL 827343, at *9).

Plaintiffs here allege that they both "suffered anxiety and depression as a result of [C.A.'s]

treatment," and that C.A.'s "anxiety and depression following her treatment . . . has greatly

increased."  (ECF No. 2 ¶¶ 62, 264.)  Plaintiffs' allegations are plainly insufficient to state a

plausible claim.  They alleged no impact on their functioning and allege no "facts regarding the

nature, intensity, and duration of the alleged emotional trauma." *Lewis-Davis*, 2021 WL 1720235,

at *14, *supra*; *see also McDaniel v. Maryland*, No. CIV.A. RDB-10-00189, 2010 WL 3260007, at

*9 (D. Md. Aug. 18, 2010) (dismissing IIED claim where plaintiff had "not set forth 'specific facts regarding the nature, intensity, and duration of the alleged emotional trauma'") (quoting *Chin*, 2006 WL 827343, at *9); *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (dismissing IIED claim where plaintiff alleged "severe depression, anxiety, sleeplessness, headaches, and [being] sick to her stomach," but failed to allege facts related to impairment of her daily functioning). The court will therefore grant the Motion to dismiss Count XVI.[13]

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, the Motion will be granted as to Count VI, to the extent it seeks injunctive relief, and as to Counts VIII, IX, X, XI, XIV, and XVI; the Motion will be denied as to Count VI, to the extent it seeks compensatory damages, and as to Counts V and VII.

August 27, 2025                                                /S/

                                          _____
                                          Julie R. Rubin
                                          United States District Judge

---

[13] Throughout their opposition, Plaintiffs make reference to their intention to seek leave to amend. Plaintiffs remain free to seek leave to amend in accordance with Federal Rule of Civil Procedure 15(a)(2) should they so choose.